RECEIVED
IN ALEXANDRIA, LA.
APR 3 0 2012
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| CAVENDER ENTERPRISE LEASING FAMILY, LLC | CIVIL ACTION NO. 11-573 |
| VERSUS | JUDGE TRIMBLE |
| REGIONS BANK | MAGISTRATE JUDGE KIRK |

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendant Regions Bank ("Regions") in the above-captioned suit.[1] Regions' motion seeks dismissal of all claims against it by plaintiff Cavender Enterprise Leasing Family, LLC ("Cavender") as well as judgment in its favor on its counterclaim against Cavender.

The court has received briefs on the issues and now finds that the motion is ripe for decision. For the reasons expressed below, the court finds that Regions' motion for summary judgment as to Cavender's claims against it should be **DENIED**. Accordingly, we also find that Regions' counterclaim in the amount of $99,245.00 should be **DENIED and DISMISSED** with prejudice.

I.  **RELEVANT FACTS**

This suit arises from a landlord-tenant dispute regarding property located at 1500 North 18th Street, Monroe, Louisiana ("Building"). The Building was originally owned by First States Investors 4200, LLC ("First States"), who entered into a lease agreement ("Lease") on or about

---

[1] R. 29.

1

June 15, 2005 to lease certain square footage within the Building, as well as drive-in teller sites and automated teller machine sites (collectively "Leased Premises"), to Regions. On or about March 23, 2007, Regions notified First States of a change in its address for notice purposes under the Lease.

First States assigned its right, title and interest in the Building to Cavender on or about February 15, 2008. By virtue of the sale of the Building, Cavender became the landlord under the Lease executed in favor of Regions. Cavender remains the owner of the Building and the Landlord under the Lease to this day.

Regions alleges that the Leased Premises were damaged by water intrusion in the Spring of 2010, later determined to be caused by one or more leaks in the roof of the Building. Regions asserts that the HVAC system was also damaged by the water intrusion and needed repair, maintenance or replacement.

By letter dated May 18, 2010, Regions, through its attorney Kay Bains, informed Cavender that second floor roof leaks had caused a variety of damage to drywall, carpet and ceiling tiles and, additionally, that the HVAC system was "in need of repair or replacement."[2] The letter cites several provisions of the Lease, including Section 19.4, which provides, in part, as follows:

> **19.4 Landlord Default; Tenant's Remedies For Landlord Default.** If Landlord fails to perform any of its obligations hereunder, Tenant (except in the case of emergency) shall take no action without first having given Landlord thirty (30) days notice describing with specificity any such failure; provided that if the nature of Landlord's failure is such that it cannot reasonably be cured within such thirty (30) day period, the time for curing such failure shall be extended for such period of time as may be necessary to complete such cure, so long as Landlord shall proceed promptly to cure same and shall prosecute such cure continuously, in good faith and with due diligence. Following such notice and

---

[2] R. 17-3.

2

> failure by Landlord to cure within such period, Tenant shall have all rights available to it at law or in equity, and shall have the further right to take the necessary actions to perform Landlord's uncured obligations hereunder and invoice Landlord for the reasonable cost and reasonable expenses therof, unless Landlord has diligently commenced to perform its uncured obligations hereunder within said thirty (30) day period. Landlord shall reimburse Tenant for any costs reasonably incurred by Tenant pursuant to this Section 19.4 within twenty (20) days following Landlord's receipt of Tenant's written demand therefore /sic/, together with copies of paid invoices or other documentation evidencing such costs. If Landlord fails to reimburse Tenant within such twenty (20) day period, and if Landlord's failure continues for more than five (5) business days following Landlord's receipt of a second notice that states in all capital letters (or other prominent display) that Tenant may offset Rental due under this Lease if Landlord fails to pay the required amounts within five (5) business days after receipt thereof, Tenant shall have the right to offset and deduct said sum from its next payment(s) of Rental.[3]

The letter asserts that Regions was in default of Section 5.7 of the Lease, which obligates

the Landlord to

> ...make any improvements or repairs or replacements as may be necessary to maintain the Building and the Property, including but not limited to, the parking lot(s), in a manner consistent with comparable buildings, and to cause the Building and the Property, including, but not limited to, the parking lot(s), to be in compliance with all applicable laws and regulations (except that Tenant shall be responsible for one hundred percent (100%) of the cost of such compliance to the extent located within the Leased Premises), and such additional maintenance or repair as may be necessary because of damages by persons other than the Tenant, its agents, employees, invitees or visitors. All repairs made by the Landlord shall be accomplished after the notice required pursuant to <u>Section 10</u> and without exposing Tenant, its employees, and its guests and invitees to harm or to harmful substances. Landlord shall not be liable for any damage or inconvenience which may arise through repair or alterations of any part of the Building or Leased Premises; provided, that Landlord, to the extent practical, shall endeavor to make any repairs or alterations in such a manner so as to minimize any inconvenience to Tenant.[4]

---

[3] R. 17-2.
[4] R. 17-2.

The letter advises that it constitutes the required thirty (30) day notice, commencing May 19, 2010, under Section 19.4 of the Lease and that failure by the Landlord to cure the damages noted therein will result in Regions' exercise of its right of cure as outlined in Section 19.4 of the Lease.[5] The letter discloses that it was sent via FedEx to Cavender at "7632 Union Valley Road, Fairview, TN, 37062" and, additionally, via e-mail to Jennifer Bratton, Joe Holcombe, Mary Autry and Bryan Nesbit.[6] The letter will be referred to, hereafter, as Regions' "First Notice" to Cavender.

Cavender asserts that it didn't receive Regions' First Notice because it was mailed to an old address. Cavender explains that it provided Regions written notice of its change of address pursuant to the Lease on or about July 16, 2008.[7] Cavender's notice of change of address was mailed to "Regions Bank, 7130 Goodlett Farms Parkway, ALE, Cordova, TN, 38016, Attn: Portfolio Administration" and additionally to Regions Bank at "298 West Valley Avenue, Birmingham, Alabama, 35209, Attention: Keith B. Pressley" and to Regions counsel, Bradley, Arant, Rose and White, LLP, at "One Federal Place, 1819 Fifth Avenue, Birmingham, Alabama, 35203-2104."[8]

Neither party disputes that Cavender did not act to cure any of the damages referenced in Regions' First Notice. At the expiration of the thirty (30) day period required by Section 19.4 of the Lease, Regions undertook the repairs referenced in its First Notice at a total cost of $99,245.00.[9] The letter Regions describes as its "Second Notice" was sent through counsel, Kay

---

[5] R. 17-3.
[6] Id.
[7] R. 27-2 at p. 29.
[8] Id.
[9] R. 17 at p. 5.

4

Bains, to Donald L. Kneipp at "1401 Hudson Lane, Suite 300, Monroe, Louisiana, 71201."[10] The letter states, in part

> [a]s you may recall, I sent to you on August 3, 2010, a letter regarding the above-referenced site, and the failure of the Landlord to make the repairs required under the terms of the [L]ease.[11]

Regions enclosed, with the letter, copies of three (3) invoices totaling $99,245.00. Neither party disputes that Cavender did not reimburse Regions for the invoiced repairs within twenty (20) days after receipt of this letter or at any time thereafter.

Regions sent what it refers to as its "Third Notice" to Cavender by letter dated January 18, 2011. This Third Notice, like the Second Notice, was mailed to Cavender's attorney Donald Kneipp.[12] Regions' Third Notice asserted that, pursuant to Section 19.4 of the Lease, Regions would begin offsetting the amount of future rent paid to Cavender if Cavender did not reimburse Regions for the invoiced repairs within five (5) days of receipt of such letter.[13]

Beginning with its February 2011 payment, Regions deducted the amount it claimed due and reimbursable ($99,245.00) from its rent payments and resumed full payments of rent once it was reimbursed for the invoiced repairs. In response, Cavender filed a "Petition for Possession of Premises" against Regions on March 4, 2011 in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana, seeking eviction of its Tenant, Regions. Regions removed the action to this court and filed an Answer and Counterclaim seeking judgment against Cavender in the amount of $99,245.00 plus interest and attorney fees under the Lease.

## II. APPLICABLE STANDARD

As amended, Fed. R. Civ. P. 56(a) provides, in part, that

---

[10] R. 17-3.
[11] Id.
[12] R. 17-3.
[13] Id.

> [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[14]

Once the movant makes such a showing, the burden shifts to the nonmoving party to show that summary judgment is not appropriate by pointing to specific factual allegations which, when taken as true by the court for purposes of the motion, demonstrate that a genuine issue remains for trial.[15] An issue is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[16]

All evidence produced in support of or in opposition to the motion must be of the sort which would be admissible at the trial of the merits.[17] The court will construe the evidence in the light most favorable to the nonmoving party in that, when faced with specific factual averments by the nonmoving party that contradict specific factual averments by the movant, the court will deny summary judgment.

When confronted with a motion for summary judgment, the nonmoving party may not successfully preserve its claim by resting on the pleadings, but instead, must offer evidence in the form of affidavits, deposition testimony, answers to interrogatories and documents supporting such specific factual allegations.[18] Conclusory allegations unsupported by evidence will not suffice. The nonmoving party must demonstrate more than some "metaphysical doubt"

---

[14] Fed. R. Civ. P. 56 was amended, effective December 1, 2010, but such amendment did not make substantive changes to the summary judgment standard. See advisory committee comments to Rule 56 (2010 amendments).
[15] Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986);
[16] Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) citing Anderson, 477 U.S. at 248.
[17] Fed. R. Civ. P. 56(c)(2).
[18] Fed. R. Civ. P. 56(c)(1).

as to the material facts.[19] Where the record, taken as a whole could not support a rational trier of fact's finding for the nonmoving party, there is no genuine issue for trial.[20]

### III. ANALYSIS

Regions asserts that Cavender initiated a summary eviction action against it by the filing of its "Petition for Possession of Premises" in the Fourth Judicial District Court and that such action must now be dismissed on the basis that Cavender continued to collect rental payments from Regions after serving Regions with a "Notice to Vacate."[21] Cavender offers several arguments against dismissal on this basis. First, Cavender denies that the suit, now lodged in this court, constitutes a summary eviction proceeding, arguing that federal courts do not offer summary eviction remedy. Cavender concludes that, by removing the suit to federal court, the nature of the suit became one of ordinary proceeding. Cavender also argues that, rather than accepting future rents from Regions after its February 24, 2011 "Notice to Vacate," the rents accepted after that date constituted past due rents which it had the right to recoup.

The court agrees that Regions' removal of the suit to this court has resulted in an ordinary proceeding, particularly in light of Regions' own counterclaim for money judgment. Accordingly, we decline to dismiss on this argument.

A lease is a contract and, therefore, subject to interpretation according to Louisiana contract law.[22] A contract has the effect of law as between the parties and must be performed in good faith.[23] A court interpreting a contract, such as a lease, seeks to ascertain the common

---

[19] Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 477 U.S. 242 (1986).
[20] Id.
[21] R. 24.
[22] La. Civ. C. Arts. 1906, 2668; Section 29.4 of the Lease at issue statutes that "[t]his lease and the rights and obligations of the parties hereto are governed by the laws of the State in which the Building is located." [R. 17-2 at p. 36] As noted above, the Building is located in the State of Louisiana, making Louisiana contract law applicable to the dispute among these parties. The court further notes that neither party argues inapplicability of Louisiana law.
[23] La. Civ. C. Art. 1983.

7

intent of the parties.[24] If the court finds that the words of contract, as written, are clear and explicit and lead to no absurd results, the court may interpret the contract no more and must simply apply the plain language of the contract as written.[25]

Section 29.13 of the Lease states:

**Notices**

29.13.1  The Tenant shall pay the Rental and shall forward all notices to Landlord at the following address (or at such other place as Landlord may hereafter designate in writing):

First States Investors 4200, LLC
680 Old York Road
Jenkintown, PA  19046
Attention:  Nicholas S. Schorsch, President and CEO

with a copy to:

First States Group, L.P.
680 Old York Road
Jenkintown, PA  19046
Attention:  Edward J. Matey, Jr., General Counsel

29.13.2  The Landlord shall forward all notices to Tenant at the following address (or at such other place as Tenant may hereafter designate in writing):

Regions Bank
7130 Goodlett Farms Parkway
ALE
Cordova, TN  38016
Attention:  Portfolio Administration

with a copy to:

Regions Bank
298 West Valley Avenue
Birmingham, Alabama  35209
Attention:  Keith B. Pressley

---

[24] La. Civ. C. Art. 2045.
[25] La. Civ. C. Art. 2046.

8

>> with an additional copy to:
>>
>> Bradley Arant Rose & White LLP
>> One Federal Place
>> 1819 Fifth Avenue
>> Birmingham, Alabama 35203-2104
>> Attention: Kay K. Bains, Esq.
>
> **29.13.3** Any notice provided for in this Lease shall be deemed given when delivered, if by hand deliver, or three (3) business days following deposit, by certified mail, return receipt requested, with the United States Postal Service or one (1) business day following deposit with any nationally recognized overnight delivery service.[26]

Evidence before the court demonstrates that Regions sent notice of its change of address to its then-landlord, First States, on or about March 23, 2007.[27] The evidence also suggests that First States neglected to inform Cavender of Regions' change of address upon its purchase of the Building.[28] On the other hand, Regions received notice of the identity and notice address of its new landlord, Cavender, on or about July 16, 2008, following Cavender's purchase of the Building.[29] Cavender's letter asks that all notices and correspondence be sent henceforth to

>> Cavender Enterprise Leasing Family, LLC
>> P.O. Box 764
>> 7380 Cumberland Drive
>> Fairview, TN 37062
>> (615) 799-6000[30]

Nevertheless, the parties engaged in correspondence which demonstrates that, by letter dated January 20, 2009, each party was plainly aware of the correct mailing address of the other.[31]

---

[26] R. 17-2 at pp. 52-53.
[27] R. 29-3 at Exhibit "C."
[28] R. 36-1 at p. 4.
[29] R. 27-2 at p. 29.
[30] Id.
[31] R. 36-1 at p. 5.

Email correspondence, dated January 7, 2009 between Regions' Vice President/Manager for Portfolio Administration and Melissa Cavender, Cavender's Administrative and Operations Manager, discloses that Regions requested formal notice of Cavender's change of address and that this email exchange was prompted by what appears to be a prior attempt at correspondence with Cavender by Regions' counsel, Bains.[32] Cavender's January 20, 2009 letter represents the formal notice requested by Regions and references Regions' original change of address notice, to First States, in 2007 which specifically requests that the Landlord

> update [its] records and delete all prior Notice Addresses (including all cc addresses) noted in the lease document or in prior correspondence.[33]

Pursuant to Regions' 2007 instructions, Cavender's January 20, 2009 letter notes that no copies were sent to any other persons.[34] Thus, the only copy of this letter was mailed to Jennifer Bratton at Regions' own request.

As explained above, Regions sent its First Notice to Cavender on or about May 18, 2010, through its counsel, Bains. This correspondence, mailed to Cavender at its old address, 7632 Union Valley Road, Fairview, TN, 37062, was also courtesy copied by e-mail to several other people: Jennifer Bratton, Joe Holcombe, Mary Autry and Bryan Nesbit. So, in summary, Bains sent the letter to the wrong address and none of the people courtesy copied on the letter noticed the error. Thus, the evidence demonstrates that Regions breached the Lease by failing to provide proper notice of necessary repair under Sections 19.4 and 29.13. Accordingly, Regions was not entitled to avail itself of the set-off in the amount of $99,245.00. We find that such sum is now due Cavender as rent owed and not paid and, therefore, Regions' motion for summary judgment as to breach of contract should be denied. For that reason, we also find that Regions'

---

[32] Id. at p. 4.
[33] R. 29-3 at Exhibit "C."
[34] R. 36-1 at p. 5.

as to breach of contract should be denied. For that reason, we also find that Regions' counterclaim against Cavender seeking damages in the amount of $99,245.00 should be denied and dismissed.

Cavender's remaining claim in this suit is one for eviction from premises. Regions asserts that Cavender's claim for eviction should be denied on the basis that Cavender continued to accept rent from Regions after its Notice of Eviction. Cavender denies this, arguing that the money accepted from Regions after the Notice of Eviction represented past due rent, not future rent and the acceptance of past due rent does not negate a prior eviction notice under Louisiana law.

Louisiana law provides that when a lessee defaults on a lease agreement, the lessor has two options: (1) to sue to cancel the lease and collect unpaid rent now due, or (2) sue to enforce the lease and collect both unpaid rent now due and future accelerated rent, when such remedy is provided for in the lease itself.[35] Louisiana law also provides a summary process for eviction, found in La. C.Civ. P. Art. 4701, et seq., which is designed to expedite the removal of the lessee from the property. In a case, such as the one before this court, where the terms of the lease are contested, summary proceedings for eviction are unavailable, particularly when the lessor continues to accept rent from the lessee.[36]

Thus, it's clear to us that, even if this suit remained in Louisiana's Fourth Judicial District Court, no summary proceeding would have been available to the parties given the fact issues raised among them, which we have resolved above. Therefore, the court finds that whether or not Cavender's acceptance of rent, past or future, after its Notice of Eviction negated such notice is moot.

---

[35] Richard v. Broussard, 495 So.2d 1291, 1293 (La. 1927) (internal citations omitted).
[36] Bowling U.S.A., Inc. v. Genco, 536 So.2d 814 (La. App. 1 Cir. 1988).

As we have already found above, Regions committed the first breach of the Lease when it failed to provide contractual notice to Cavender as to its request for repairs and maintenance and now owes Cavender $99,245.00, representing the cost of unpaid rent unlawfully discounted by Regions. The remaining issue, therefore, is eviction.

Under Section 19.2 of the Lease, Cavender is entitled to evict Regions from the Leased Property if Regions defaults on the Lease.[37] Our ruling clearly indicates default by Regions.

Should Cavender desire to enforce its right of eviction against Regions, it shall file a motion for and proposed order of eviction within thirty (30) days of the issuance of this ruling, after which time Regions shall be permitted twenty-one (21) days in which to file any response. Thereafter, Cavender may file any reply within ten (10) days of any opposition by Regions.

**Alexandria, Louisiana**
**April 30, 2012**

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　JAMES T. TRIMBLE, JR.
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[37] R. 17-2 at pp. 45-46.